John A. Christie and Elizabeth H. Christie, Husband and Wife v. Commissioner.
Christie v. Commissioner
Docket No. 21042.
United States Tax Court
1949 Tax Ct. Memo LEXIS 63; 8 T.C.M. (CCH) 897; T.C.M. (RIA) 49248; September 30, 1949
Russell W. Jackson, Esq, 120 Broadway, New York 5, N. Y., for the petitioners. W. Morgan Hunter, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: By this proceeding petitioners challenge respondent's determination of a deficiency of $3,685.81 in income tax for 1945, as well as a penalty of $393.26 asserted under Internal Revenue Code, section 294 (d) (2). The issue presented is whether Internal Revenue Code, section 107, is applicable to petitioner's share of a fee received in the taxable year for legal services rendered by petitioner John A. Christie to the Borough of Fair Lawn, New Jersey. Findings of Fact Petitioners, John A. Christie and Elizabeth H. Christie, husband and wife, of Fair Lawn, New Jersey, filed a joint *64 income tax return for the taxable year 1945, with the collector of internal revenue for the fifth district of New Jersey at Newark. On the return, income and deductions were reported in accordance with the cash method of accounting. For convenience John A. Christie will be hereinafter referred to as petitioner. Petitioner is an attorney-at-law and has been engaged in the practice of law in the State of New Jersey since 1930. On January 1, 1939, and annually thereafter, up to and including January 1, 1947, petitioner was appointed Borough attorney for the Borough of Fair Lawn, New Jersey. The appointments were made by the Mayor of Fair Lawn, and the terms expired by law on January 1 of each year. Petitioner's duties as Borough attorney were to attend all meetings of the council, prepare resolutions for the conduct of business, and advise the various Borough departments, such as police, welfare, and zoning on legal matters. For such services he was paid a monthly retainer fee at the rate of $1,500 a year. He was also called upon from time to time to do additional legal work for which he invoiced the Borough and was paid accordingly. While he was Borough attorney, petitioner was *65 offered and accepted all of the additional legal work for the council. The additional fees usually were on account of litigation and for the preparation of ordinances for street, water, and road improvements. In 1939 Fair Lawn was without sanitary sewer facilities except for one small portion of the area which was served by a private plant, owned and operated by Radburn, Inc. In that year Fair Lawn decided to undertake the construction of a sanitary sewer for the entire Borough. In March, 1939, petitioner was engaged by the Mayor and Sewer Committee of the council to perform the work necessary and preliminary to the drafting and adoption of an ordinance which when finally approved by the voters would provide the authorization for the financing and construction of the new sanitary sewer. The agreement between petitioner and representatives of the Borough was never reduced to writing nor spread upon the minutes of the Borough council. The authorizing ordinance was to provide for the compensation for the work done by petitioner and unless and until the financing and construction of the sewer were duly authorized petitioner was to receive no compensation for his services. If petitioner *66 had failed of reappointment as Borough attorney for any year after 1939, he might not have continued to perform the legal work on the sewer project. Had petitioner's services in connection with the sewer project terminated, he would have been entitled upon the authorization of the project by the voters to submit a bill and to be paid for the services actually rendered by him. Petitioner first began working on the sewer project in March, 1939, and on April 6, 1939, made his first report to the chairman of the sewer committee. As a result of efforts of petitioner, an ordinance for a sanitary sewer was introduced in the council in September, 1940. It was not approved. In connection with the sewer project petitioner obtained the introduction and passage in the New Jersey State Legislature of a bill enlarging the jurisdiction of the Passaic Valley Sewer System to include the Borough of Fair Lawn, a bill to permit the sale and issuance of revenue bonds for financing the project, and a bill permitting the leasing of capacity in the Passaic Valley Sewer System without obtaining the consent of the original 16 contracting municipalities served by that system. Petitioner also obtained a *67 Certificate of Necessity from the New Jersey State Board of Health permitting the issuance of bonds over and above the then existing debt limitation of Fair Lawn. Prior to December 31, 1944, an application was made by petitioner to the Reconstruction Finance Corporation requesting assistance in the event the sewer project should be approved by the voters. Petitioner consulted with the War Production Board to obtain its consent for the construction of a sanitary sewer, if approved. Petitioner consulted with the New Jersey Public Utilities Commission with reference to the issuance of revenue bonds. Petitioner also consulted various agencies and commissions so that after the ordinances had been adopted by the council and authorized by the voters, the Borough would be in a position to proceed with the construction of the sewer, all necessary approvals for financing and construction having been obtained. Petitioner drafted an ordinance authorizing the construction and financing of the sanitary sewer, which ordinance was adopted by the council in September, 1944, and approved by the voters in November, 1944. After the voters ratified the ordinance in November, 1944, petitioner in December, *68 1944, certified the results of this referendum to the bonding attorneys, to the Passaic Valley Sewerage Commission, to the County of Bergen, and to the City of Paterson. In connection with the physical construction of the sewer, petitioner had conferred with officials of the Department of Local Government to effect the financing of the employment of a sanitary sewer engineer, and in 1941 drafted an ordinance authorizing the employment of the engineer and prepared a contract with the engineer for his services in drawing maps, specifications, and supervising the construction of the sewer. The need for the sanitary sewer was met by the acquisition of the private disposal plant and by connecting with the trunk sewer operated by the Passaic Valley Sewerage Commission. In December, 1944, after the ratification of the ordinance the Council adopted a resolution authorizing the filing of an application with the Passaic Valley Sewerage Commission for use of the trunk sewer. The application was filed in December, and in January, 1945, a hearing was held before the Commission. The application was subsequently approved and a lease agreement between the Commission and Fair Lawn was drafted and *69 executed. Petitioner represented and advised the Borough in these proceedings. Petitioner was also responsible for negotiating a contract with the City of Paterson which would have permitted access into the trunk sewer through the lines of the City of Paterson, and a contract with Wright Aeronautical Corporation which would have permitted the Borough to acquire a sewage disposal line which went under the river. Neither of these contracts was executed. Petitioner submitted an invoice-bill to Fair Lawn on February 1, 1945, which covered all of the services above enumerated. The invoice read as follows: "To services in connection with the authorization of the making and financing of the sewer improvement, covering the period from March 1st, 1939, to and inclusive of December 31st, 1944, including drafting and introduction and assistance in the passage of statutes enlarging the jurisdiction of the Passaic Valley Sewerage Commissioners, issuing of revenue bonds and providing for leasing of capacity in the trunk sewer; various conferences and hearings before the following Departments and Agencies: Public Utilities Commission Reconstruction Finance Corporation Department of Local *70 Government War Production Board State Board of Health Passaic Valley Sewerage Commissioners Officials of Paterson, Glen Rock, East Paterson, Hawthorne, Wright Aeronautical Corp. "Services re special election;
various conferences in Wash-
ington, Newark, Trenton, Pat-
erson, and New York, ALL
resulting in passage and cer-
tification of the ordinance au-
thorizing and financing said
improvement, and entrance into
the Passaic Valley Trunk
Sewer
$10,000.00
To disbursements for telephone
calls, telegrams, postage, trav-
elling expenses, etc.
250.00
$10,250.00"
On August 28, 1945, petitioner submitted an invoice to the Borough of Fair Lawn for $1,000, stated to be: "To services resulting in acquisition of Disposal Plant and various easements from Radburn, Inc., including various conferences in New York with Radburn, Inc. officials and Municipal officials; preparation of option agreement and renewal; obtaining title searches, negotiations for acquisition of extension of High St.; preparation of various legal papers including deed for sewerage disposal plant property, deed for High St., various easements over 10 parcels of ground covering trunk line sewer *71 from disposal plant to Radburn Road, bill of sale, "Assessment" agreement; conferences with Sanitary Sewer-Engineer and engineer of Radburn, Inc. regarding descriptions and rights of way; closing of title; recording instruments; various conferences, correspondence, telephone calls, etc…. $1,000.00" This bill was duly paid. On May 14, 1946, petitioner submitted an invoice to the Borough of Fair Lawn for $2,500, stated to be: "To services re acquisition sewer easements west of railroad; including procuring and examination of searches, preparation of easement agreements, deeds, etc., conferences, correspondence, telephone calls and miscellaneous services in the following matters: Mountain Ice Co.
Milton G. Hendlich and Anna Molk
Ross W. Wiggins
Vanderbeck, Fox and Roughgarden
Arnold Arlet
Nellie Wood
Mary Brocker
Edward S. O'Connor
Ida A. Ellis
Emma Vanderbeck
Thomas L. Smith
Public Service Electric & Gas Co.
Erie Railroad Company
Radburn, Inc.
Wagaraw Builders' Supply Co.
George C. Goerling
Radburn Association
$2,500.00" This bill was duly paid. On July 26, 1946, petitioner submitted an invoice to Fair Lawn for $3,000, stated to be: "To further *72 services to date in reference to acquisition of Sewer Easements including title searches, drawing Easement agreements obtaining and execution, recording the same, various conference with Sewer Engr., Borough Engr., Sanitary Sewer Committee and Real Estate Committee, including services of investigator, telephone calls, corres. etc. Goerling
Bowens
Young
Krauss
Appling
Grass
Van Loon
Nisky
Lione
Curto
Sunnyside Inc.
Sarno
Radburn Inc.
Hudson Trust
Coppendyke
Borgstedt
Bembridge
Clauss
Costello
Freeman
$3,000.00" This bill was duly paid. On December 20, 1946, petitioner submitted an invoice to the Borough of Fair Lawn for $500, stated to be: "To services from July, 1946, re acquisition of sewer easements east of railroad; including procuring and examination of searches, preparation of easement agreements, etc., conferences, correspondence, telephone calls and miscellaneous services in following matters: Glinski
Radburn, Inc.
Isador Friedman
Fiesser
Winne & Banta
All-American Investment Corp. Inc.
Clyde A. Bogert
Max Goldman
Inganamorte (2 easements)
$500.00 This bill was duly paid. On May 27, 1947, petitioner submitted *73 an invoice to the Borough of Fair Lawn for $5,000, stated to be: "To general legal services exclusive of acquisition of sewer easements and Radburn Disposal Plant for which I have been paid; from January, 1945 to June 1, 1947, including preparation and review of specifications and contracts for first bidding, preparation and review of contracts for subsequent bidding including Contracts I, II, III, IV, V, VI, VII, VIII and IX; preparation of various bond ordinances, resolutions and notices; obtaining necessary data for approval of bonding attorneys; contracts, ordinances etc. with Borough of Glen Rock and Passaic Valley Sewerage Commissioners; various services in connection with sale of general revenue bonds and assessment bonds; preparation of ordinances establishing sanitary sewer department, assessment commission, regulating developers, and regulating use of sewer; attendance at various meetings with various agencies in Newark, Trenton, Glen Rock, New York; various special meetings, conferences, communications, etc. including necessary office disbursements, telephone calls, postage… $5,000.00" This bill was duly paid. On or about May 22, 1945, petitioner received $10,250 *74 in payment of his February 1, 1945, bill. In accordance with his partnership agreement petitioner paid $4,000 of the fee to his partners and retained $6,250 for himself. In his notice of deficiency respondent "determined that section 107 of the Internal Revenue Code may not be applied to any sum received during the taxable year from the Borough of Fair Lawn, New Jersey." Opinion The question here is the same as that considered in William J. Morrison, 12 T.C. 709. Application of section 107, Internal Revenue Code, in order to apportion petitioner's 1945 legal fee over prior years depends, as it did in that case, upon "when the petitioner's services were completed, and this," in petitioner's language, "is important because the amount of compensation received in any one year must be eighty per centum or more of the total compensation received for personal services covering a period of 36 months or more from the beginning to the completion of such services." In this, the petitioner has grasped the basic issue. We are satisfied that the parties seek to apply to the present facts the proper statutory test. When section 107 *75 speaks of "such services" in the quoted phrase requiring completion for computation of the 80 per cent, it seems clear that the antecedent is "personal services," the compensation for which "is received * * * in one taxable year"; [1] in other words, the services for which petitioner received payment in 1945. Harry L. Addition, 3 T.C. 427. There thus seems no disagreement on the legal principle; the controversy is limited to an interpretation of the facts, *76 and, even more narrowly, to a description of the services for which the payment was received. During 1945, 1946, and 1947, petitioner received for his services in connection with the sewer a total of $22,000 of which the $11,000 invoiced in 1945 was manifestly less than 80 per cent. Unless his total services can be so divided as to eliminate the bulk of the payments subsequently made, compliance with the 80 per cent requirement will be impossible. This is what necessitates a consideration of the character of the services paid for in 1945. We need not for this purpose adopt respondent's extreme position that all of petitioner's receipts as Borough attorney for all the years during which services were performed are to be considered together. Nor, as will hereafter appear, need we choose between his alternative proposition that all of the work in connection with the sewer project was one indivisible employment, on the one hand, see Ralph E. Lum, 12 T.C. 375, and, on the other, the suggested division of "(a) legal authorization, (b) financing, (c) construction, and (d) arrangements for sewage disposal." The facts, even as interpreted by petitioner, seem to us to dispose *77 of the issue in respondent's favor on either approach. Petitioner maintains that all services performed up to the end of 1944 were covered by the 1945 payment. By that time, not only was the work directly connected with the "authorization" necessarily completed but also such things as the hiring of a sewer engineer and the procurement of War Production Board approval; as well as financing conferences with Government agencies. These "were performed for the purpose of making sure that if the voters approved the ordinance, the sewer could be financed and constructed." (Italics supplied.) The result, in petitioner's own language, was "that when the ordinance was adopted by the Council and offered to the public for its approval, the borough had received all the necessary approvals for the actual financing and construction of a sanitary sewer." And again, "By September, 1944, and as a result of petitioner's efforts, all the necessary arrangements and approvals had been made and obtained, so that the Council was in a position to adopt an ordinance for the construction of a sewer and to present the same to the voters for their approval, and if the ordinance was approved, the Borough could *78 have a reasonable expectation of proceeding promptly with the construction of a sewer system." (Italics supplied.) It is scarcely to be wondered at that, in the prosecution of so involved a project, the precise division and classification of its various phases might present some difficulty. It may be that the more accurate conclusion would be to agree with respondent that all of the sewer services were so intrinsically interrelated, that they must be viewed as a single job. See William J. Morrison, supra. But in any event we cannot, in the light of all the facts, escape the conviction that some services connected with the actual financing and construction of the sewer had already been performed by the time petitioner received his first payment and that they were included in the services for which the compensation was paid. Before they were completed - that is before petitioner had concluded his work on financing and construction, as well as authorization - additional sums had been received in subsequent years, which concededly would reduce the 1945 payment below the 80 per cent. In sum, our interpretation of the facts is that in 1945 petitioner received not only all *79 his compensation for work on the "legal authorization," but also some (unsegregated) payment for services connected with financing and construction, all of which, by the time they were ultimately completed, resulted in compensation to petitioner of an amount much greater than 5/4ths of the 1945 payment. We are accordingly compelled to the conclusion that, on either theory, the payment in controversy may not be dealt with under section 107. Petitioners concede their liability for the penalty. Decision will be entered for the respondent. Footnotes
1. "SEC. 107. COMPENSATION FOR SERVICES RENDERED FOR A PERIOD OF THIRTY-SIX MONTHS OR MORE AND BACK PAY. "(a) Personal Services. - If at least 80 per centum of the total compensation for personal services covering a period of thirty-six calendar months or more (from the beginning to the completion of such services) is received or accrued in one taxable year by an individual or a partnership, the tax attributable to any part thereof which is included in the gross income of any individual shall not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income of such individual ratably over that part of the period which precedes the date of such receipt or accrual."↩